UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE

Colleen R. Collins, et al.

    v.                                      Civil No. 13-cv-352-JD
                                                      Opinion No. 2014 DNH 066
Dartmouth-Hitchcock, Medical
Center and James E. Saunders

O R D E R

Colleen Collins, Ruth Collins, and Debra Ceriello brought suit against Dartmouth-Hitchcock Medical Center and James Saunders, asserting various state law claims and claims under the Americans With Disabilities Act, 42 U.S.C. § 12101, et. seq., and the Rehabilitation Act of 1973, 29 U.S.C. § 701, et. seq., arising out of the defendants' conduct toward Colleen Collins during a hospital stay and subsequent medical appointments. The defendants move to dismiss the plaintiffs' claim for enhanced compensatory damages. The plaintiffs object.

Background

The background information is a summary of allegations in the complaint for purposes of this order only and does not provide factual findings or a factual background for any other purpose.

Colleen Collins, a "profoundly deaf individual," used a Cochlear implant for several years to help her hear better. Although the Cochlear implant allowed Colleen to have some hearing, she still suffered from significant hearing loss and,

therefore, communicated at times in sign language. In addition, Colleen has learning and vision difficulties associated with Turner Syndrome.

On September 16, 2011, Colleen underwent a surgical procedure to replace her Cochlear implant, which had been malfunctioning. The procedure was performed by Dr. James Saunders, a physician at Dartmouth-Hitchcock Medical Center ("DHMC"). The procedure was unsuccessful and, when Colleen awoke from the procedure, she was unable to hear anything.

Saunders, knowing that Colleen would be unable to hear after the procedure, did not provide her with a sign language interpreter when he met with her to inform her of the outcome of the operation.[1] Instead, Saunders attempted to explain what happened during the operation to Colleen's sisters, Ruth Collins and Debra Ceriello, in the hope that they would pass along the information to Colleen.[2]

Ruth and Ceriello insisted that Saunders address Colleen directly, and Saunders attempted to explain what happened to Colleen by talking to her. Because the procedure had been unsuccessful, however, Colleen was unable to hear or understand

---

[1] The plaintiffs allege that Colleen, who had been Saunders' patient since 1990, had requested an interpreter on several occasions in the past, but that Saunders' office had told her that it did not know how to request one.

[2] It is unclear whether Ruth and Ceriello were with Colleen when Saunders attempted to explain to them the results of the procedure, or whether Saunders explained it to them separately while Colleen was alone in the recovery room.

Saunders. Saunders then wrote on a piece of paper what happened during the procedure. Colleen, however, did not have her glasses, and could not read the written explanation.

The plaintiffs allege that Saunders did not return for eight hours after his failed attempt to explain what happened during the operation. He eventually returned without an interpreter, despite the availability of several interpreters, and again attempted to convey the results of the operation to Colleen by writing on a piece of paper. The plaintiffs allege that Saunders attempted to communicate unsuccessfully with Colleen for fifteen minutes, and that the interaction "left Colleen . . . wondering if she was going to die."

In subsequent appointments, Ruth and Ceriello made certain that both DHMC and Saunders were aware that Colleen required an interpreter at all medical appointments. After receiving the request, in the summer of 2013, employees of DHMC and Saunders forced Colleen to sign a waiver indicating she did not wish to have an interpreter. The employees told Colleen that she would not be treated by DHMC or Saunders unless she signed the waiver. Since her surgery, Colleen has repeatedly been denied an interpreter by DHMC.[3]

---

[3]The plaintiffs allege that Colleen recovered some hearing six months after the operation.

Standard of Review

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to move to dismiss on the ground that the plaintiff's complaint fails to state a claim on which relief can be granted.  In assessing a complaint for purposes of a motion to dismiss, the court "separate[s] the factual allegations from the conclusory statements in order to analyze whether the former, if taken as true, set forth a plausible, not merely conceivable, case for relief."  Juarez v. Select Portfolio Servicing, Inc., 708 F.3d 269, 276 (1st Cir. 2013) (internal quotation marks omitted).  "If the facts alleged in [the complaint] allow the court to draw the reasonable inference that the defendants are liable for the misconduct alleged, the claim has facial plausibility."  Id. (internal quotation marks omitted).

Discussion

The defendants move to dismiss the plaintiffs' claim for enhanced compensatory damages (Count XIII).  They argue that the complaint does not allege that they exhibited "wanton, malicious, or oppressive" conduct.[4]

"'When an act is wanton, malicious, or oppressive, the aggravating circumstances may be reflected in an award of

---

[4]Although it does not affect the outcome of the defendants' motion, the court notes that "'enhanced compensatory damages' . . . is a potential remedy, not a cause of action." Stevens v. Liberty Mut. Grp., Inc., 2013 WL 3895167. at *6 n.5 (D.N.H. July 29, 2013).

enhanced compensatory damages.'"  <u>Stewart v. Bader</u>, 154 N.H. 75, 87 (2006) (quoting <u>Figoli v. R.J. Moreau Cos., Inc.</u>, 151 N.H. 618, 625 (2005)).  "Wanton conduct means that the actor is aware that his actions are causing a great risk of harm to others," <u>Johnson v. The Capital Offset Co., Inc.</u>, 2012 WL 781000, at *1 (D.N.H. Mar. 6, 2012), or that the actor recklessly creates a risk of great harm, <u>see</u> <u>Minion Inc. v. Burdin</u>, 929 F. Supp. 521, 525 (D.N.H. 1996).  Malicious or oppressive actions are those done with "ill will, hatred, hostility, or evil motive."  <u>Stewart</u>, 154 N.H. at 87.

 The plaintiffs allege that the defendants failed to provide Colleen with an interpreter immediately after the operation despite knowing that she would be unable to hear, and that the defendants failed to make efforts to explain to Colleen what happened during the operation for at least another eight hours after Saunders's initial attempt.  The plaintiffs allege that, as a result of being left alone for several hours without any explanation as to why she could not hear, Colleen was concerned that she might die.  Drawing all reasonable inferences in the light most favorable to the plaintiffs, those allegations plausibly support a claim that the defendants recklessly created a risk of great harm.  <u>See</u> <u>Thompson v. Forest</u>, 136 N.H. 215, 220 (1992)("The defendant who acts in the belief or consciousness that the act is causing an appreciable risk of harm to another may be negligent, and if the risk is great the conduct may be characterized as reckless . . . .").

In addition, the plaintiffs allege that the defendants retaliated against Colleen by threatening to withhold further medical care and forcing her to sign a waiver surrendering her right to an interpreter. Viewing those allegations in the light most favorable to the plaintiffs, the defendants' conduct in retaliating against Colleen could be considered malicious or oppressive. Therefore, at this preliminary stage, the plaintiffs have alleged enough to state a claim for enhanced compensatory damages.

## Conclusion

For the foregoing reasons, the defendants' partial motion to dismiss (document no. 14) is denied.

SO ORDERED.

/s/ Joseph A. DiClerico, Jr.
Joseph A. DiClerico, Jr.
United States District Judge

April 7, 2014

cc: Paul J. Bauer, Esq.
 Peter W. Mosseau, Esq.
 Kirk C. Simoneau, Esq.